UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20467-CR-GOLD

UNITED STATES OF AMERICA

    v.

JOHN KEITH DANKS,

        Defendant.
_____/

## GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING

The United States of America hereby files it's Position With Respect to Sentencing in the instant matter, and would show:

### I. PSR Issues

The Addendum To The Presentence Report (PSR) notes that several amendment to the original PSR had been made, to account for the receipt of additional income information related to calendar years 2003 - 2005. Beyond those nominal changes, the original PSR stands without alteration, or objection by either party.

The government is unaware of any remaining issues with the PSR.

### II. Guidelines Calculations

Defendant stands convicted upon his plea on February 9, 2007, to a single charge of

conspiring to commit offenses against the United States, that is, to transport and transfer stolen prescription medical devices in interstate commerce and to hinder and impede the lawful functions of the Food & Drug Administration (FDA).

Pursuant to the procedures of this Court, a Presentence Investigation Report (PSR) was prepared and shared with the parties.

As noted in the PSR, defendant engaged in a multi-year effort to benefit from the purchase through co-conspirators of stolen prescription medical devices, and their subsequent sale to other distributors in violation of the Food, Drug & Cosmetic Act. Over the course of the criminal conspiracy, from approximately January 1997 through January 2005, defendant realized $8,837,148.00 in gain from the sale of devices to which he held no legal right, title, or interest. He conducted literally hundreds of illicit transactions where all of the derived profits from his sales of the devices were distributed to his suppliers in payment for the stolen devices or retained for his personal benefit. Because the PSR's Offense Conduct section details the nature of the conspiracy, no further recitation of general facts seems warranted herein.

Case law interpreting and implementing the decisions of the Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) and *United States v. Fanfan*, 543 U.S. ___, 125 S. Ct. 738 (2005), clearly requires that a District Courts first properly calculate a Guideline range in

order to conduct an effective sentencing hearing.[1] In the instant case, there appears to be no challenge to the relatively straightforward calculations of the PSR which concludes that an adjusted advisory guideline level of 27 and a criminal history category of I are appropriate, which equate to an advisory Guideline range of 70 - 87 months. However, in light of the single-count Information to which defendant pled, the charge under Title 18, United States Code, Section 371, limits the sentence in this matter to a maximum of 60 months.

The Eleventh Circuit has clearly adopted the view that the Guidelines are a "mirror image" of the factors set forth in Title 18, United States Code, Section 3553(a).[2] This verbiage strongly suggests that District Courts must, at the very least, give considerable weight to the advisory guideline range. *See also United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005)(sentence within a properly calculated guideline range will almost always be found reasonable and little explanation will be required, whereas non-guideline sentences require carefully articulated reasons

---

[1] *See United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005)(miscalculation of advisory Guideline range "effectively means that district court has not properly consulted the Guidelines.").

[2] In *United States v. Shelton*, 400 F.3d 1325 (11th Cir. 2005), after stating that the "Guidelines remain an important factor in sentencing," the Court observed in a footnote that:

After *Booker*, the federal Sentencing guidelines remain an essential consideration in the imposition of federal sentences, albeit along with the factors in §3553(a). A sentencing court under *Booker* still must consider the Guidelines, and, such consideration necessarily requires the sentencing court to calculate the Guidelines range in the same manner as before *Booker*. **Indeed, the factors the Sentencing Commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under *Booker* and §3553(a).** 400 F.3d 1332 n. 9 (emphasis added).

demonstrating

why the sentence is appropriate for the particular defendant).

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The government recognizes that application of the Section 3553 factors involves a balancing of the various considerations, tailored to the individual case. The most salient for current purposes may be those incorporated in Subsection (a)(2)(A)-(C) where this entire industry appears beset with a pattern of illegal practices that deprive legitimate owners of their property, raising serious concerns over public health and safety, and a strong deterrent message is needed..

As this Honorable Court is aware from the PSR, a significant number of similar cases have been addressed and resolved in this District since June, 2005. Unfortunately, in only one of those cases was a single source exploited to acquire the devices sold and a readily identifiable victim of the conduct available to receive restitution of the stolen items. In the instant case, defendant received the stolen devices from more than 10 suppliers, some of whom acted as "middlemen" for even more sales representatives. Thus, defendant is not in a position to identify with any particularity the source of any of the many items he purchased from the various sources. Despite the conviction to date of nine of those sources, they, too, are unable to relate the items on the invoices documenting their sales to defendant to specific customers or their employer. Accordingly, the Plea Agreement in this matter reflects a forfeiture of the illicit gain rather than a restitution to victims. The failure of the suppliers to maintain detailed records renders it impracticable to identify particular victims.

### III.   Section 5K1.1  Motion

Defendant's Plea Agreement contemplated the possibility of the filing of a Section 5K1.1

Motion by the United States, to reduce the sentence which would otherwise be imposed upon him. Defendant, in the judgment of the United States, has met the standard for entitlement to such a Motion, and the United States hereby moves this Honorable Court to award a reasonable downward adjustment to the sentence otherwise to be imposed on defendant. Defendant, following agreement between the parties, was debriefed by the United States and provided information relevant to its investigation in this matter of the various co-conspirators and others. This information provided context to other evidence available to the government, and ultimately was a significant factor in the decision of others to resolve their criminal culpability through guilty pleas. It is also anticipated that in continuing fulfillment of his cooperation agreement, defendant will be called as a witness in a pending matter involving three of his co-conspirators.

Despite this Motion, it would in the government's view be unreasonable to impose a non-custodial sentence.[3] As one jurist in this District noted at a sentencing hearing in another of these device cases, involving theft of an amount less than 10% of the gain herein, theft by a bank robber of such an amount, would make the news for days. The fact that the theft herein was surreptitious does not otherwise reduce the seriousness of the offense. It is noteworthy that the sentences imposed in similar cases involving substantially less gain have resulted in custodial sentences, even for those defendants who also received the benefit of Section 5K1.1 Motions. *See, e.g.*, *United States v. Sands*, Case No. 05-29517-CR-Huck (case involved forfeiture of $57,699.29 in gain and a split sentence of four months incarceration and four months home detention); *United States v. Lash*, Case

---

[3]In light of the government's filing of this 5K1.1 Motion, defendant's pending motion which is characterized in part as a Motion For Downward Departure is somewhat superfluous. The government thus interprets that Motion in the nature of an argument for a significant reduction from the sentence otherwise appropriate under the advisory Guideline calculation of the PSR.

No. 05-60142-CR-COHN (case involved forfeiture of $185,778.93 in gain and a split sentence of five months incarceration and five months home detention); *United States v. Jerdine*, Case No. 05-20251-CR-Gold (case involved forfeiture of $771,398.76 in gain and a sentence of 22 months incarceration. While the circumstances of each defendant were necessarily different to some degree,[4] the fundamental crime was the same.

On Motion, defendant addresses several of the 3553(a) factors, but is curiously silent on the general deterrence and other points under (a)(2), preferring to address only the defendant's personal circumstances and neglecting other significant considerations in the sentencing process.

The Eleventh Circuit has recently focused greater attention on the issue of general deterrence in the context of white collar crime. In *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006), the decision took the trial court to task for focusing excessively on the individual deterrence factor and failing to adequately consider general deterrence. Citing to the Senate Report, by the Congress that enacted Section 3553, the Court understood that deterrence was of particular concern to Congress in the area of white collar crime and recognized " . . . the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense . . . ." *Id.* The Senate Report specifically expressed the view that probation was too often imposed in white collar crime cases, with inadequate " . . . consideration being given to the fact that the heightened deterrent effect of incarceration and the readily

---

[4] For example, one defendant labored under a life-threatening medical condition, and many were the single or shared-custody parents of minor children.

perceivable receipt of just punishment accorded by incarceration were of critical importance." *Id.*

That general deterrence is needed in the medical sales field is readily apparent from the fact that charges are pending or resolved in more than 20 cases over a two-year period, in this District alone, related to fraudulent transactions in the medical device sales field.[5] In order to discourage such conduct within that industry, and comparable industries that operate through chains of distributors and employee-salespeople, a priority concern of the Court at sentencing must be fashioning a sentence that truly deters others from similar activity.

The defendant asserts that his responsibility to care for his family, and specifically his minor child, calls for a reduced sentence. While the circumstances described are indeed sad, the defendant should not receive a downward departure in the advisory guideline range on this basis, as his situation is not sufficiently extraordinary to warrant a departure. Likewise, while this Court has authority to consider family circumstances as a basis for a reduced sentence apart from the guideline calculation, the facts as presented fail to present a compelling case when measured against the Commentary accompanying U.S.S.G.§ 5H1.6. As the Sentencing Commission recognized, inconvenience and even harm to a criminal defendant's family are normal results of a criminal act, and ordinarily do not warrant leniency. Particularly where no showing has been made that effective remedial or ameliorative programs are not reasonably available, including assumption of the described care by defendant's spouse, defendant's caretaking support is not demonstrably

---

[5]The "Related Cases" segment of the PSR identifies some of the similarly charged cases. However, these are not all cases "related" as a matter of law to the instant matter, since some involved defendants selling to a different "fence," not defendant Danks.

irreplaceable. The Commission's judgment is sound, and such leniency should not be afforded here, given the severity of the defendant's offenses, the need for the Court to avoid disparate sentences for like offenders, and the fact that the defendant's family has the means to maintain itself in his absence.

### IV.  RECOMMENDATION

Based on the foregoing discussion, and a sentencing range pursuant to the advisory Guidelines exceeding the statutory maximum of 60 months in Zone D, the United States respectfully recommends the Court reduce defendant's sentence, and sentence to the defendant to a term of imprisonment of thirty-six (36) months, followed by a term of supervised release of three years, a fine of $50,000, and a special assessment of $100.00. Further, the United States requests the Court enter an Order of Forfeiture in favor of the United States, payable through the Clerk, U.S. Courts, in the amount of $8,837,148.00.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By:       s/ Thomas A. Watts-FitzGerald
          Assistant U. S. Attorney
          FL Bar # 0273538
          99 N.E. 4th Street
          Miami, FL 33132
          305-961-9413 (ph.)
          305-536-4651 (fax)

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on   August 13, 2007  , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                          s/   Thomas A. Watts-FitzGerald